UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BARKIEM RASHEED AMIR,

                                                    Plaintiff,

          vs.

ALBANY COUNTY; ALBANY COUNTY                    9:04-CV-4
SHERIFF'S DEPARTMENT; JAMES                      (J. Mordue)
CAMPBELL; THOMAS WIGGER; SGT.
KUHL; DAVID DANNIBALE[1]; C.O.
SEYMOUR; and JAMES KLEIN,

                                                    Defendants.

_____

APPEARANCES                              OF COUNSEL

BARKIEM RASHEED AMIR
Plaintiff pro se

ROCHE, CORRIGAN LAW FIRM              ROBERT P. ROCHE, ESQ.
Attorneys for Defendants

GUSTAVE J. DI BIANCO, Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

          This matter has been referred to me for Report and Recommendation by the

Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

          In this civil rights complaint, plaintiff alleges that he was assaulted by one of

the defendants while others looked on and failed to stop the assault.  Plaintiff also

_____

[1] This is the correct spelling of this defendant's name.

alleges that the disciplinary hearing and subsequent criminal proceedings that were held as a result of the incident denied plaintiff due process of law.

Plaintiff seeks substantial compensatory and punitive damages.

Presently before the court is plaintiff's motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 33). Defendants have opposed plaintiff's motion and have cross-moved for summary judgment in their favor. (Dkt. No. 45). Plaintiff has responded in opposition to the cross-motion, and defendants have filed a reply. (Dkt. Nos. 51, 52). For the following reasons, this court will recommend denying plaintiff's motion for summary judgment and will recommend granting defendants' motion in part and denying it in part.

## DISCUSSION

### 1.  Motion for Summary Judgment

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty*

2

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).  However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

In this case, plaintiff made a motion for summary judgment pursuant to Rule 56. Defendants then made a cross-motion pursuant to Rules 56 and 12(b)(6).  Because the court has considered matters outside the complaint, this court will follow the standard for summary judgment.

**2.    <u>Facts</u>**

The altercation at issue in this case occurred between plaintiff and defendants Corrections Officer Dannibale, Sergeant Kuhl, and apparently Corrections Officer Seymour.  Plaintiff alleges that on August 24, 2002, when he was incarcerated in the Albany County Jail, defendant Dannibale told plaintiff to pack his belongings so that he could be moved. Complaint (Statement of Facts) ¶ 1.  Plaintiff then claims that as he and another inmate were inquiring of another officer as to the reason for the move, defendant Dannibale walked over to plaintiff's left side and "attacked the Plaintiff from behind with the Facility issued radio." *Id.* ¶ 2.

3

Plaintiff alleges that defendant Dannibale then continued to beat plaintiff and that defendant Kuhl was holding plaintiff against the wall so that defendant Dannibale could continue the beating, hitting plaintiff in the face and head with the radio. *Id.* ¶ 4. However, plaintiff also states that defendant Kuhl yelled at defendant Dannibale to stop, but that defendant Dannibale continued until plaintiff "sustained deep gaping wounds." *Id.*

Plaintiff then states that another officer, who has not been named as a defendant, "hit the alarm after Plaintiff nearly lost his life." *Id.* ¶ 5. Plaintiff states that he was taken to Albany Medical Center Hospital, but that defendant Seymour would not allow the hospital to take photographs of the injuries. *Id.* ¶ 8. Plaintiff alleges that he filed a grievance, but appears to state that there was no response in the appropriate 45 day period. *Id.* ¶ 9.

Plaintiff claims that the supervisory officials, Sheriff Campbell and Superintendent Wigger, should have protected plaintiff from the vicious assault by defendants Dannibale, Kuhl, and Seymour. Plaintiff claims that the supervisory defendants failed to properly train and supervise the individuals who allegedly assaulted plaintiff.

Plaintiff was issued a misbehavior report as a result of this incident, claiming that plaintiff was the aggressor, and it was he who assaulted the staff. Plaintiff was also charged with the criminal offense of Assault. Complaint (introductory section)

4

¶ 2.  Plaintiff claims that he was found guilty at his disciplinary hearing and received a penalty of 120 days keeplock, but that he was not afforded the opportunity to call witnesses, nor was the hearing recorded.  Plaintiff states that he was "denied the opportunity to file a Complaint of assault ... against C.O. [Dannibale]". *Id.* ¶ 4.  Plaintiff also claims that he was denied access to counsel, and that he was indicted on October 17, 2002.  Plaintiff states that he was offered a plea, but refused and that the indictment was dismissed on November 9, 2002.

The court notes that in plaintiff's motion for summary judgment and in his affidavit in support of the summary judgment motion, he adds facts and claims that are not contained in the complaint.  Based on the liberality with which pro se complaints must be treated, this court has considered all of what plaintiff appears to be claiming.

Defendants allege a very different version of the events of August 24, 2002.  Defendant Dannibale states that he was moving plaintiff off the tier of his housing unit.  Plaintiff walked to the front gate of the tier, but refused to go any further, and began yelling at the officers.  Defendant Dannibale then states that plaintiff dropped his belongings and assumed a "fighting stance."  Defendant Dannibale states that he ordered plaintiff to stop and tried to restrain him, but that plaintiff began hitting defendant Dannibale in the head and face.  Dannibale states that the other officers that were present attempted to assist him, and that they tried to pull the "horn" and the "pin" on the radio, but were not successful in activating "these devices."  Defendant

5

Dannibale states that defendant Kuhl used pepper spray in an attempt to subdue plaintiff.  When other officers came to assist, plaintiff was still resisting, but he finally was restrained and taken to the Medical Department for treatment of the exposure to the pepper spray. Defendants' Ex. C at p.1 ("Supporting Deposition" of David Dannibale dated August 26, 2002).  Defendant Dannibale states that he also went to the Medical Department for treatment of his injuries as a result of the altercation. Plaintiff was ultimately taken to the Albany Medical Center, where plaintiff got stitches for a laceration on his left eyebrow and on the back of his head.

Sergeant Kuhl was also interviewed about the incident, and he stated that plaintiff was not initially cooperative when asked to move, but then began to pack his belongings.  Defendant Kuhl states that plaintiff then walked to the front of the tier, and defendant Kuhl turned to write in the log book.  Defendant Kuhl stated that his back was to plaintiff, and the next thing that Kuhl heard was plaintiff and defendant Dannibale "having words."  When Kuhl turned to see what was happening, he saw plaintiff hitting defendant Dannibale.  Kuhl stated that Officer George Bull was near by and attempted to help defendant Dannibale.

Defendant Kuhl stated that he went over to where the altercation was occurring and told plaintiff to stop or Kuhl would have to use "chemical agents" on plaintiff. Defendant Kuhl stated that plaintiff did not respond to his order.  Defendant Kuhl attempted to pull the "horn" and the "pin" on the radio, but it did not work, so he

radioed for assistance.  He also sprayed the plaintiff with pepper spray, hitting Officer

Bull at the same time.  Plaintiff continued to resist, but was subdued when other

officers arrived to assist.  Defendant Kuhl stated that plaintiff was sent to the facility

Medical department for treatment of his injuries, and defendant Dannibale and Officer

Bull were both sent to the facility Medical Department for their injuries.  Defendant

Dannibale had some contusions and bumps on his head and face, and Officer Bull was

treated for pepper spray exposure. Defendants' Ex. C at 4-5.

Defendants' Exhibit C also contains a memorandum written by defendant Klein

to Inspector Mark DeFrancesco.  Defendant Klein stated that he was informed of the

altercation on August 26, 2002 (only two days after the incident), when Captain Mark

Kremek (plaintiff's hearing officer) told defendant Klein that plaintiff wished to speak

to an investigator.  The Klein memorandum also states that he began to interview

plaintiff, but that plaintiff stopped speaking with Klein when Klein informed plaintiff

that he was a suspect in the assault on staff.  Although plaintiff stopped the interview,

defendant Klein stated that he sent a copy of the incident report to the Professional

Standards Unit.

The case was reviewed by defendant Klein's immediate supervisor, and the

investigation determined that there was sufficient evidence to charge plaintiff with

assault.  Plaintiff was arrested on September 11, 2002 and arraigned in Colonie Town

Court for Assault, Second Degree.  The case was presented to the Grand Jury on

7

October 23, 2002, and plaintiff was indicted on the charge. Plaintiff was also found guilty of the misbehavior after his disciplinary hearing and sentenced to 120 days keeplock as well as a loss of privileges. Plaintiff spent 14 days of confinement in the Special Housing Unit (SHU) prior to the hearing. Defendants' Ex. E.

Plaintiff filed a facility grievance against defendant Dannibale on September 3, 2002, alleging that defendant Dannibale was the aggressor in the assault and requesting that defendant Dannibale be charged criminally with assault. Defendants' Ex. F. The grievance was denied, and the document states that a "full" inquiry was made into the grievance. The Chief Administrative Officer reviewed the grievance and on September 6, 2002 affirmed the grievance denial. Defendants' Ex. G.

On September 11, 2002, plaintiff appealed this finding to the Citizens' Policy and Complaint Review Council. Defendants' Ex. G at 1. The Grievance investigation form indicates that several corrections officers were interviewed: defendant Dannibale, Officer Bull; Sergeant Kuhl; Sergeant Brundage; and Lieutenant R. Bauer. Defendant's Ex. G at 2.

Although it is true that the criminal felony charges were dismissed against plaintiff on November 25, 2002, it is clear from a transcript of the proceeding that the felony charges were dismissed because plaintiff had agreed to plead guilty to the misdemeanor charge of obstructing governmental administration. Supplemental Roche Aff. ¶ 3, Transcript of Proceedings in Albany County Court at 2. It is also clear from

the first page of the transcript that the plaintiff was present and represented by counsel at this proceeding. *Id.* at 1.

### 3.  **Respondeat Superior/ Municipal Liability**

The court notes that plaintiff has named the County of Albany and the Albany County Sheriff's Department as defendants, together with James Campbell, the Sheriff of Albany County and Thomas Wigger, Superintendent of the Albany County Correctional Facility.  Defendants Campbell and Wigger are both supervisory individuals who clearly had no personal involvement in the incident in question.

It is well-settled that in order to be held liable for damages in a section 1983 action a defendant must have been personally involved in the alleged violation. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.), *cert. denied*, 434 U.S. 1087 (1978).  The doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).

In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation.  A supervisory official is said to have been personally involved if that official directly participated in the infraction.  *Id*.  A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the

wrong. *Id*. Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*.

The above case law is applicable to a consideration of whether the supervisory officials would be liable ***individually*** for damages in a section 1983 action. With respect to holding these individuals liable in their ***official*** capacity and thus, establishing municipal liability[2], plaintiff would have to show that the action that is alleged to be unconstitutional resulted from a "policy" or "custom" of the municipality. *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003). When a claim against a municipality is based upon actions of subordinates such as in this case, municipal liability will be determined by plaintiff's ability to attribute the officer's conduct to the actions or omissions of higher ranking officials with policymaking authority. *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).

One method of attributing conduct to the municipality is for plaintiff to show

---

[2] An ***official capacity*** suit is essentially a suit against the municipality by which the individual is employed. A section 1983 action against municipal officers in their official capacity is treated as an action against the municipality itself. *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005)(citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)).

that the policymaker was aware of the subordinates' unconstitutional actions and consciously chose to ignore them, effectively ratifying the actions. *Id.* (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)). Thus, where the policymaking official shows "deliberate indifference" to constitutional violations caused by subordinates, such that the official's actions rise to the level of a "deliberate choice", then that acquiescence may be considered the municipality's policy or custom that is actionable under section 1983. *Id.* (citing *City of Canton Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995); *Jeffes v. Barnes*, 208 F.3d 49, 63 (2d Cir. 2000)(holding that a sheriff's acquiescence in unconstitutional retaliation could be inferred from his tolerance and encouragement of harassment of plaintiffs)). The Second Circuit also stated in *Amnesty America*, that because a single action on the part of a ***policymaker*** is sufficient to create a municipal policy, then "a ***single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability***." 361 F.3d at 127 (emphasis added).

In this case, it is clear that neither Sheriff Campbell nor Superintendent Wigger was personally involved in either plaintiff's assault or the investigation that occurred thereafter. If plaintiff can show that these two individuals created a custom or policy allowing the alleged unconstitutional action to occur or that they were grossly negligent in managing the subordinates who engaged in the unconstitutional conduct, they could be personally liable for the violation under *Williams*. If the policy or

11

custom could be attributed to the County, then the municipality could be liable for the alleged constitutional violation.  For municipal liability the question is whether plaintiff has sufficiently asserted that these individuals are policymakers and whether plaintiff has alleged that there is a custom or policy sufficient for municipal liability.

In an attempt to show a policy, plaintiff requested *inter alia* the disciplinary records of some of the defendants and personnel records of some individuals who were not defendants.  In an order dated September 1, 2005, I denied plaintiff's request for the personnel records of Investigator Monteleone, who is not a defendant and had nothing to do with the assault, the only claim for which disciplinary records might be remotely relevant. (Dkt. No. 48).  I did request that the defendants submit *in camera* the records of defendants Dannibale, Kuhl, and Seymour, including grievances filed against them in 2002.  In an abundance of caution, I also requested the file of Captain Kramek, who is also ***not a defendant*** and had nothing to do with the alleged assault in this case.  Captain Kramek was plaintiff's hearing officer for his administrative disciplinary hearing and is the Chief Corrections Officer at the facility.  In the same order, I also denied some other discovery requested by plaintiff, a video tape that no longer existed, and investigative documents that plaintiff had already received.

Plaintiff appealed my order to the Honorable Norman A. Mordue, who on January 12, 2006 affirmed my order. (Dkt. No. 54).  Plaintiff has now appealed this order to the Second Circuit.  Defendants have submitted the records pursuant to my

order for *in camera* review.  Since I did not deny plaintiff's request for the personnel

records, but merely ordered that they be reviewed *in camera*, I will review the records

and include that order with this recommendation on the motions for summary

judgment.  I would also note that since plaintiff has moved for summary judgment, he

cannot also argue that additional discovery is necessary.  If that were the case, his

summary judgment motion would have to be denied in any event.

I note that the records show that in 2002, there were no grievances filed against

any of the officers in question.[3]

I have also reviewed the disciplinary records for Officers Kuhl, Dannibale,

Kramek, and Seymour.  Sergeant Kuhl's disciplinary records have **no relevance to the**

**issues in question in this complaint**.  They are all personal issues and no inmates are

even mentioned in the documents.  Thus, these documents would have no relevance to

a finding of a "custom" or "policy" by supervisory officials.

Chief Kramek's record is also not relevant because as in defendant Kuhl's case,

none of the records deal with interaction with inmates.  In any event, this court finds

that Chief Kramek's records would have been irrelevant because he was only the

hearing officer and not involved in the alleged assault.  Again, this record would not

be supportive of a determination that the supervisory officials had a "policy" or

---

[3] The court assumes that this statement by defendants indicates that there were no grievances other than the one filed by plaintiff against the officers who allegedly assaulted him.  Plaintiff's grievance was filed in October of 2002.

"custom" sufficient for municipal liability.

The same is true for the disciplinary records of defendants Dannibale and Seymour.  Although defendant Seymour has some disciplinary infractions in which an inmate is mentioned, none of them have to do with force or violence of any kind. Thus, none of these reports are relevant to the municipal liability issues in this case. The court will deny production of these documents to the plaintiff.

The court would note that the documents actually support the defendants' motion for summary judgment regarding the County, the Sheriff's Department and the supervisory officials in their official capacity.  Additionally, these documents support dismissal of the case against the supervisory officials in their individual capacity because they show that the officials were not grossly negligent in managing their subordinates since these subordinates had nothing in their records that would have indicated a propensity for the conduct that is alleged by plaintiff.  In fact, the records show just the opposite.

Based on all the evidence presented, there is no material question of fact raised regarding municipal liability.  There is no indication of a custom, policy, or even gross negligence in managing subordinates who are alleged to have caused the constitutional violation.  Thus, this court will recommend dismissing this action as against Albany County; Albany County Sheriff's Department; defendant Campbell (both individually and in his official capacity); and defendant Wigger (both

14

individually and in his official capacity).

## 4.   **Due Process**

Plaintiff seems to make some vague claims that this court has interpreted as

alleging a denial of procedural due process relating to the administrative and judicial

proceedings that were held against him as a result of the incident.

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that

although states may still create liberty interests protected by due process, "these

interests will be generally limited to freedom from restraint which, while not

exceeding the sentence in such an unexpected manner as to give rise to protection by

the Due Process Clause of its own force ..., nonetheless imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Court in *Sandin* determined that the inmate's discipline in segregated confinement

for 30 days did ***not*** present the type of atypical, significant deprivation in which the

state might create a liberty interest.  *Id*.

### A.  Disciplinary Hearing

In this case, plaintiff was afforded a disciplinary hearing and was sentenced to

120 days keeplock, with only 14 days of that time served in the SHU and a deprivation

of privileges. Defendants' Ex. E.  Keeplock is a form of confinement where the

individual is confined to his own cell as a disciplinary sentence.  The deprivation is

not as significant as if plaintiff had been sent to a segregated unit of the facility.  Thus,

it is possible that no liberty interest would have been created as a result of the sentence received by plaintiff.  It would not have been considered "atypical" or "significant."

The court does not have to make that determination, however, based on the facts of the complaint.  Although plaintiff seems to allege that he was denied witnesses and was denied the right to have his hearing tape recorded, he does ***not name the hearing officer, Chief Kramek, as a defendant***.  Thus, there is no defendant named who would have been responsible for granting or denying a request for witnesses or for recording the hearing.[4]  The court also notes that defendants have submitted documents from the disciplinary hearing.  Plaintiff did not request witnesses or wish to present evidence. Defendants' Ex. E.  Plaintiff signed the Inmate Disciplinary Review Form, indicating that he did not ask for witnesses and did not wish to present any evidence. *Id.*  Even assuming that a liberty interest existed, plaintiff cannot now complain that he did not get due process because he was denied witnesses and the opportunity to tape record the proceeding.

Plaintiff also alleges that defendants Dannibale and Kuhl filed false charges against him, claiming that plaintiff was the aggressor in the incident.  The law is clear

---

[4] Tape recording the hearing, even assuming that it is a state rule or regulation, is not one of the constitutional due process rights afforded to an inmate who has a liberty interest.  Any violations of state regulations governing the procedures for disciplinary hearings also do not rise to the level of constitutional violations. *See Dixon v. Goord*, 224 F. Supp. 2d 739, 744-45 (S.D.N.Y. 2002)(federal standards, not state law define the requirements of due process, and violations of State procedural rules alone do not implicate constitutional rights)(citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)).

that there is ***no constitutional violation*** caused by the issuance of a false misbehavior report alone. *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988).

### B. Criminal Charges

Plaintiff also alleges some vague violations regarding his criminal case.  Once again, there is no defendant responsible for initiating the criminal proceedings, and as stated above, plaintiff does not have a liberty interest in not being falsely accused. Although plaintiff states that he was denied access to counsel, the court notes that he was represented at the state court criminal proceedings.  Defendants have submitted the transcript of the proceeding in which plaintiff's criminal indictment was dismissed, and it is clear that plaintiff was represented by counsel.  The transcript is attached to defense counsel's supplemental affidavit.  Plaintiff was represented by Michael Feit, Assistant Public Defender and plaintiff was clearly present at the proceeding himself.

The court would also point out that plaintiff did not relate the entire story regarding the criminal charges.  Plaintiff alleges in the complaint that the indictment was dismissed, implying that the charges were unfounded or unsubstantiated. However, a review of the transcript of the dismissal shows that the only reason that the felony charge was dismissed was because plaintiff had agreed to plead guilty to a misdemeanor charge of obstructing governmental administration in exchange for

17

dismissal of the felony charge. Transcript of November 25, 2002 at 2.  This in no way affects the defendants' claim that plaintiff was the aggressor in the August 24, 2002 incident.

### C.  Grievance

Although plaintiff claims that he was "prevented" from filing a grievance, he does not name any individual who might have been responsible for this alleged action. Additionally, the records submitted by defendants show that plaintiff filed a grievance on September 3, 2003.  Although the grievance was untimely, the documents state that a "full investigation" was conducted. Defendants' Ex. F, G.  Plaintiff has named defendant James Klein as a defendant.  Defendant Klein participated in the facility investigation of the incident (separate from plaintiff's grievance) and took statements from the officers involved. Defendants' Ex. C.  Defendants Exhibit C contains defendant Klein's memorandum and the statements of defendants Kuhl and Dannibale.

To the extent that plaintiff alleges that the investigation, either of his grievance or the facility investigation, was inadequate, he states no constitutional claim.  Courts have consistently held that because grievances procedures are undertaken voluntarily by New York and other states, they are ***not constitutionally required***. *See Ramos v. Hanslmaier*, 96 Civ. 744, 1997 U.S. Dist. LEXIS 6082, *6-7 (S.D.N.Y. Feb. 19, 1997)(multiple citations omitted). *See also Bullock v. Horn,* CV-99-1402, 2000 U.S. Dist. LEXIS 21573, *22-23 (M.D. Pa. 2000)(plaintiff claimed improper refusal to

process grievance); *Hoover v. Watson*, 886 F. Supp. 410, 418-19 (D. Del.), *aff'd*, 74

F.3d 1226 (3d Cir. 1995); *Muhammad v. McMickens*, 86 Civ. 7376, 1988 U.S. Dist.

LEXIS 552, *8-9 (S.D.N.Y. Jan. 25, 1988).  Because the grievance procedures are not

constitutionally required, a state's violation of those procedures or its failure to

enforce them does not give rise to a claim under section 1983. *Id.*

Plaintiff does not name an individual who investigated his grievance, thus, there

is no claim stated and no defendant named in that regard.  Plaintiff's grievance was

appealed and denied all the way to the Civilian Review Board. Wigger Aff ¶ 7.  Chief

Kramek has submitted an affidavit, stating that defendant Klein's investigation was a

separate investigation undertaken by the Sheriff's Department. Kramek Aff. ¶ 10.  The

facility itself conducted its own investigation. *Id.*  Defendant Klein's investigation was

under the supervision of Investigator Monteleone, and the results of the investigation

were presented to Investigator DeFrancesco, the Internal Affairs Officer. *Id.*

Plaintiff's belief that defendant Klein did not properly investigate the incident does

not state a constitutional due process violation, and any claim against defendant Klein

may be dismissed.

Defendant Wigger and Chief Kramek have submitted affidavits stating that

plaintiff also filed a ***separate*** complaint with the New York State Commission on

Correction. Kramek Aff. ¶ 11, Wigger Aff. ¶ 8.  Defendant Superintendent Wigger

states in his affidavit that the Commission on Correction conducted its own

investigation.  Individuals from the Commission visited the facility, reviewed the documents created in conjunction with the incident, conducted interviews, and spoke to plaintiff. Wigger Aff. ¶ 8.  Defendant Wigger states that the facility officials received notification that the Commission had also rejected plaintiff's complaint.

Although plaintiff's response to the cross-motion is full of conclusory allegations that defendants somehow falsified evidence, there is absolutely no basis for those allegations.  The documents do not support plaintiff's statements, and plaintiff does not indicate how documents were or might have been altered.  Based on all the evidence, there is no material question of fact regarding plaintiff's procedural due process claim.  Under no view of the facts can plaintiff allege a due process violation with either the administrative or judicial proceedings in this case.

**5.     Excessive Force**

Plaintiff in this case appears to have been a pretrial detainee at the time of the incident, thus, it is the Due Process Clause of the Fourteenth Amendment (substantive rather than procedural), rather than the Eighth Amendment that protects him from being subjected to excessive force.  The Second Circuit has held, however, that the standard for determining excessive force in the context of a pretrial detainee is the same as that used under the Eighth Amendment.

When the use of excessive force is alleged, the court must determine whether the force "was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm." *Whitely v. Albers*, 475 U.S. 312, 320-21 (1986)(quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)).  In order to meet the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency' and 'repugnant to the conscience of mankind.'"*Whitely*, 475 U.S. at 327.

Minor uses of physical force do not reach the constitutional level as long as the force used is not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  However, the court must determine the need for the force, the relationship between the need and the amount of force used, the extent of the injury suffered, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Whitely*, 475 U.S. at 321.  The absence of serious injury may be relevant to the inquiry, but does not end it. *See Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)(citing *Hudson*, 503 U.S. at 7).

Plaintiff alleges that he was beaten until he "nearly lost his life."  He alleges that Officer Dannibale attacked him.  Defendants allege that plaintiff dropped his belongings and assumed a fighting stance, and that it was he who began hitting defendant Dannibale.  Plaintiff alleges that Sergeant Kuhl actually held plaintiff against the wall while Dannibale continued to hit plaintiff viciously about the head and face with his radio.  However, at the same time, plaintiff states that defendant

Kuhl told Dannibale to stop because plaintiff had enough.

Plaintiff's own submissions do not exactly support his claims.  The medical report from Albany Medical Center states that plaintiff suffered head and facial lacerations that were sutured, but that the examination was negative for traumatic injury.  The investigations showed that plaintiff was the aggressor, and plaintiff appears to have pled guilty to a reduced charge in satisfaction of the assault charges. Even if plaintiff were the aggressor, it would still have to be determined whether defendants used excessive force in subduing plaintiff.  Thus, the fact that plaintiff was determined to be the aggressor, although not beneficial to plaintiff does not necessarily answer the question of excessive force.  Additionally, the one report from the Albany Medical Center, although again not beneficial to plaintiff, is also not by itself determinative of the ultimate issue of excessive force.

Therefore, the court will not recommend granting summary judgment in favor of defendants Dannibale, Kuhl, and Seymour on this issue of excessive force.  The court would point out, however, that it is unclear what actions defendant Seymour took.  His name never appeared in any of the investigative reports, and in fact, plaintiff never mentions him in the complaint until he states that defendant Seymour refused to allow the hospital staff to take pictures of plaintiff's injuries.  In Chief Kramek's affidavit it states that defendant Seymour "merely took Amir to the hospital as a precaution." Kramek Aff. ¶ 10.  It is unclear whether Seymour was present during

the altercation, and thus might be held liable if he watched and acquiesced in the use of excessive force, or whether he "merely" took plaintiff to the hospital.  However, since the court cannot make that determination based on the evidence presented, I will not recommend granting summary judgment in his favor at this time.  If this recommendation is accepted, the only claim remaining will be plaintiff's excessive force claim only as against defendants Dannibale, Kuhl, and Seymour individually. All other claims and defendants will be dismissed.  Any official capacity claims may also be dismissed against all defendants.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that after *in camera* review of the relevant records, plaintiff's request for the production of the officers' personnel and disciplinary records is **DENIED**, and it is

**RECOMMENDED**, that plaintiff's motion for summary judgment (Dkt. No. 33) be **DENIED**, and it is

**RECOMMENDED**, that defendants' cross-motion for summary judgment (Dkt. No. 45) be **DENIED ONLY AS TO THE CLAIM OF EXCESSIVE FORCE AS TO DEFENDANTS DANNIBALE, KUHL, AND SEYMOUR**, and it is

**RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 45) be **GRANTED IN ALL OTHER RESPECTS**, and the complaint dismissed in its entirety as to defendants **ALBANY COUNTY; ALBANY COUNTY**

**SHERIFF'S DEPARTMENT; JAMES CAMPBELL; THOMAS WIGGER; and**

**JAMES KLEIN.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten

days within which to file written objections to the foregoing report.  Such objections

shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated: February 15, 2006

Hon. Gustave J. DiBianco
U.S. Magistrate Judge

24